THE HARTMAN TOBACCO COMPANY *v.* NEWMAN E. ARGRAVES, HIGHWAY COMMISSIONER

| SUPERIOR COURT | HARTFORD COUNTY | FILE No. 109627 |
| --- | --- | --- |

Memorandum filed May 12, 1959

*Alcorn, Bakewell & Smith* and *Pelgrift, Dodd, Blumenfeld & Nair,* both of Hartford, for the plaintiff.

*Albert L. Coles,* attorney general, and *Jack Rubin,* assistant attorney general, both of Hartford, for the defendant.

PHILLIPS, J. This application for appraisal fees is brought under § 13-150 of the 1958 Revision, which provides that, in condemnations by the highway commissioner, "[i]f the amount of the reassessment [by a state referee] of such damages awarded to any such property owner exceeds the amount of the assessment of such damages by the highway commissioner for such land, said court or such judge shall award to such property owner such appraisal fees as said court or such judge determines to be reasonable." The quoted phrase was an amendment to the existing statute (Rev. 1949, § 2267) and was passed by the legislature in 1957. Public Acts 1957, No. 632, § 2. It represented a new legislative policy in this particular type of condemnation, similar to that which had been adopted with respect to condemnations by natural gas companies. The court, in awarding an appraisal fee, is therefore not bound by the general statute concerning costs, § 52-257, which limits fees of parties paid for an expert on the value of land to $50. *State* v. *Giant's Neck Land & Improvement Co.,* 116 Conn. 119. The court is to fix such fee as it deems "reasonable."

In general, whatever labor, skill, research and other activities go into making the actual valuation and communicating it to the owner and the court should be considered a part of the appraisal. Conferences with attorneys to help them in preparation for the trial or during the trial should not be included. The following elements should be considered by the court in determining what is a reasonable appraisal fee: the experience and qualifications of the appraisers, the character of the appraisal, the values of the properties involved, the type of work which the appraisers did, the time spent by them, includ-

ing field work, and the necessary time spent in court for the purpose of testifying. It is obvious that the field work, that is, inspection and measurements of buildings, equipment and fixtures, research into sales of other comparable properties, and the like, is essential to the appraisal.

In the present case, both appraisers David C. Mahoney and Moses J. Neiditz are experienced and competent appraisers who have been engaged in this work for many years. The appraisal itself was an unusually complex and difficult one. The property involved consists of eleven different buildings of various types and construction which have been brought together into a unified plant for the processing of shade-grown tobacco. Many of the buildings had equipment and facilities for processing, such as humidifying, sorting, baling, and air-conditioning equipment, which had to be considered by the appraisers. As only a portion of the property was taken, the appraisers had to place a value upon the whole before the taking and of the portion that was left after the taking. As was stated by the state referee *(Maltbie, J.)* who heard the case, "Never have I been presented with a problem of determining the amount of damages in condemnation which presents so many variants in the factors involved as this one." The referee awarded the plaintiff $315,000 by reason of the taking of a portion of its plant. The state had appraised the property taken at $200,000. The condemnation was obviously an important one both to the state and the parties.

The appraisers inspected each building and each floor, made measurements of all rooms and buildings, inspected the facilities and equipment, consulted an expert in tobacco processing with relation to this equipment, conducted extensive investigations to find out if there had been sales of other comparable properties, and devoted a good deal of

time in their offices studying the valuations. Mahoney made three separate appraisals commencing July, 1953, due to changes in the taking line. On the first, he spent a minimum of three days on the site, on the other two appraisals at least a day each. All the work he did on the first two appraisals was utilized by him in making his final appraisal. It was cumulative. He testified for portions of two days in court. He kept no written record of time spent in field work or on the site. This would have been advisable in an appraisal of such importance, but it is not necessary in the instant case for the court to arrive at a fair determination. He has submitted a bill of $4325. Broken down it is $3000 for the appraisals, i.e., field work, office work, research and investigations, $1025 for forty-one hours of conferences with attorneys at $25 per hour, $300 for two days in court testifying. Neiditz started his work early in 1956. There was one change in the line between the start and completion of his work. He did much the same type of work as Mr. Mahoney, though not as extensive. He appeared in court two days and testified as to before and after values. He likewise failed to record the time he spent on the job. He has submitted a bill for $3000.

Both appraisers submitted reports to the property owner, that of Mahoney being particularly careful and complete. Plaintiff's exhibit A; defendant's exhibit 4. The item of $1025 in Mahoney's bill for conferences with attorneys is not allowed. The court considers $3300 is a reasonable fee for his services as appraiser, and this amount is awarded the plaintiff. The court considers that $2500 is a reasonable fee for the services of Moses J. Neiditz as appraiser, and this amount is also awarded the plaintiff.